UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TIMOTHY ALLMAN, TINA ALLMAN, PRECIOUS AMAECHI, TORRANCE CLEMMONS, JERRY COX, JR., DONALD CREAR, CHRISTOPHER DYER, TIM ERVIN, BILLY HAMILTON, LATORREZ JONES, JUANITA KELLY, ADRAIN MOFFETT, RUSSELL MOORE, JEFFREY PAYTON, JAMES SHIELDS, JEWELL SIMPSON AND TERRY TROUT on behalf of themselves and on behalf of all others similarly situated** <br> *Plaintiffs,* <br><br> **v.** <br><br> **DALLAS COUNTY, TEXAS, CLAY JENKINS in his official capacity as Dallas County Judge, DR. THERESA DANIEL, ANDY SOMMERMAN, JOHN WILEY PRICE, AND DR. ELBA GARCIA, in their official capacities as Dallas County Commissioners** <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § § § | **CIVIL CASE NO. ________________** |

**COMPLAINT – AN "OPT-IN" CLASS ACTION**

**PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW Plaintiffs Timothy Allman, Tina Allman, Precious Amaechi, Torrance Clemmons, Jerry Cox, Jr., Donald Crear, Christopher Dyer, Tim Ervin, Billy Hamilton, LaTorrez Jones, Juanita Kelly, Adrain Moffett, Russell Moore, Jeffrey Payton, James Shields, Jewell Simpson, Terry Trout and all those employees similarly situated of Dallas County ("Plaintiffs") and file this Original Complaint against Defendant Dallas County ("County") and its elected officials Judge Clay Jenkins, Dr. Theresa Daniel, Andy Sommerman, John Wiley Price and Dr. Elba Garcia who

constitute the Dallas County Commissioners Court ("DCCC") for violations of federal and state laws and would show the Court the following:

**INTRODUCTION**

1. The Office of the County Sheriff is a creature of the Texas Constitution. Article 5, section 23 of the Texas Constitution states: "There shall be elected by the qualified voters of each county a Sheriff, who shall hold his office for the term of four years, whose duties, qualifications, prerequisites, and fees of office, shall be prescribed by the Legislature, and vacancies in whose office shall be filled by the commissioners court until the next general election."

2. The sheriff holds a myriad of duties, most established by Texas law. The position serves many in both the civil and criminal justice systems. In the civil arena the sheriff is required to execute all process directed to him/her by legal authority and shall return the process or precept to the proper court on or before the date the process or precept is returnable. The sheriff holds the responsibility of carrying out orders from the court and then returning paperwork to the court to certify that the orders were fulfilled.[1]

3. In the criminal arena, the sheriff is the chief law enforcement officer of the county and is charged with the enforcement of the many criminal statutes. Sheriffs must be familiar with and be able to implement the requirements of the Code of Criminal Procedure, the Penal Code, and the forfeiture laws. Sheriffs are required to make monthly reports to the commissioners court on money collected for fines, as required by the Local Government Code and must also keep track of evidence that is placed in the custody of the sheriff's department and be prepared to testify before the grand jury and other courts if necessary. Other areas of responsibility are set out in the Transportation Code, Health & Safety Code, Agriculture Code and the Parks & Wildlife Code and

[1] Sarah L, *Office of the County Sherrif,* Texas County Progress, Jan. 28, 2005, https://countyprogress.com/office-of-the-county-sheriff/.

even the Education Code and Property Code, including things like an innate Texas thing, to capture and care for loose livestock – a very valuable asset in Texas.

4. The sheriff is also responsible for the jail by managing it in compliance with the Texas Commission on Jail Standards. In addition, the sheriff is responsible for the health and welfare of the prisoners and their personal property.

5. The sheriff appoints deputies and reserve deputies, and in many cases provides bailiffs to the courts. Sheriffs must appoint jailers and dispatchers. They oversee the jail commissary, which must be made available to the prisoners. Other duties include transporting juveniles if designated by the Commissioners Court and transporting mental patients to the state hospital, if required. In addition, the sheriff must maintain an open door to the public while operating 24 hours a day, 7 days a week, 365 days a year, to protect public safety and administer justice.

6. Dallas County was founded on Mach 30, 1846. There are approximately 908 square miles within its boundaries, consisting of 873.160 square miles of land, and 35.484 square miles of water. As of 2025 it has an estimated population of 2,615,088.[2]

7. The public expects the sheriff to hear, respond to (and hopefully resolve) their complaints, look for lost dogs and cats, settle arguments among family or neighbors, and be available 24/7. They are in many instances expected to instantly restore order to situations that took from one second, to years, to deteriorate. Taking everything into consideration, the job of a Texas sheriff is an incredible and diverse responsibility that the public expect, a respect with done correction, which includes putting their lives on the line every day, most of the time for strangers.

---

[2] Lisa C. Maxwell, *Dallas County: Georgraphy, History, and Economy*, Handbook of Texas Online, Texas State Historical Ass'n (published 1976, updated June 18, 2021), https://www.tshaonline.org/handbook/entries/dallas-county; U.S. Census Bureau, National Counties Gazetteer File (2024), available at https://www2.census.gov/geo/docs/maps-data/data/gazetteer/2024_Gazetteer/2024_gaz_counties_48.txt.

8. The Dallas County Sheriff's Office has more than 2,200 employees to perform all the above duties and responsibilities to the public at large.[3]

9. Despite the Dallas County Sheriff's efforts, and for longer than the past three years, the DCCC and its supporting administration have persistently, intentionally, and willfully subjected its Sheriff's Office employees along with the rest of its workforce, which consists of a total of approximately 6,500 current employees, to illegal employment and compensation practices that violate their rights and welfare. This complaint is filed as one more attempt by Plaintiffs, in its three-year pursuit to express their first amendment right to speak out on a matter of extreme public concern, recognizing that for doing so, retaliation is likely, as has occurred in the past.[4]

10. The financial welfare of all County non-exempt employees is at stake. This matter is brought before the court with hope that it will resolve the repetitive and systemic controversies over compensation, for the benefit of not just the Plaintiffs, but for all County non-exempt employees, and will serve to restore employees' trust in its county government-employer, and ensure, by a jointly sought consent decree, that the County forever change its habits and no longer infringes on its non-exempt employees' right to proper, timely, and legally compliant compensation. Without these 6,500 employees, the County would surely fall into chaos and lawlessness, to a disturbing degree.

11. The County's payroll and compensation system is broken. It has been broken for many years. The documented data and actions of the County cannot be described as anything but intentional, willful, and vengeful. County employees sacrifice their personal time and family life

---

[3] City of Dallas Office of Economic Development, *Business Environment*, https://www.dallasecodev.org/296/Business-Environment.

[4] *See* Tracey McManus, *Sanctioned judge sues over withheld bonus pay*, DALLAS MORNING NEWS, Sep. 17, 2025, https://www.dallasnews.com/news/politics/2025/09/17/judge-amber-givens-sues-dallas-county-over-withholding-bonus-pay-for-performance/.

to work overtime in the service of the public. Yes, in this County, no good deed goes unpunished. Its records are shoddy and unreliable, its conduct in paying non-exempt employees' compensation is arbitrary and capricious and has caused devastating mental and actual damages to the non-exempt employees' lives, forcing them to resort to litigation just to be paid for work they perform.

12. Plaintiffs, through this proceeding, seek to finally end the punitive and illegal practices of the County, which have gone on for too long, and which persist despite multiple Department of Labor investigations finding violations. Plaintiffs ask this Honorable Court to exercise its jurisdiction to stop, for once and for all, the habitual and repeated legal violations further described herein; thus, ensuring the County operates in compliance with the Rule of Law.

13. This action seeks damages, liquidated damages, attorneys' fees, taxable costs of the court, pre-judgment interest and post-judgment interest, a consent decree providing for this court to retain jurisdiction for a minimum of five years and appoint a monitor at the expenses of the County to ensure future and consistent compliance with compensation laws, and other legal and equitable relief for County's violations of the state and federal laws so that County employees are protected from both future violations and direct and pretextual retaliation.

14. County's amended pay policies violate numerous state and federal laws including the Fair Labor Standards Act (29 U.S.C.A. § 201, et seq.) ("FLSA"). Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C.A. 216(b), on behalf of the following class of similarly situated employees:

> All former, current, and future non-exempt Dallas County employees who were, are, or will be employed by Dallas County during the period of three years (or more pursuant to this Court's determination of Plaintiffs' request for tolling limitations on the basis of equitable estoppel to permit more optional participation so that other past employees harmed may participate) prior to the date of commencement of this action through the date of judgment in this action, who were not, as required by the FLSA, paid for time worked in excess of 40 hours of work in a work week.

## PARTIES

15. Plaintiffs Timothy Allman, Precious Amaechi, Torrance Clemmons, Jerry Cox, Jr., Donald Crear, Christopher Dyer, Billy Hamilton, LaTorrez Jones, Juanita Kelly, Adrain Moffett, Jeffrey Payton, James Shields and Jewell Simpson are residents of Dallas, Texas, and are non-exempt employees of the County.

16. Plaintiffs Tina Allman, Tim Ervin, Russell Moore and Terry Trout are residents of Dallas, Texas and are former non-exempt employees of the County who have since retired.

17. Defendant Dallas County ("County") is a political subdivision of the State of Texas, and a "public agency" under 29 U.S.C.A. § 203(s)(1)(C). Dallas County can be served through the Dallas County Judge, Clay Jenkins, 500 Elm Street, Suite 7000, Dallas, TX 75202.

18. Defendant Clay Jenkins in his official capacity as Dallas County Judge may be served with process at 500 Elm Street, Suite 7000, Dallas, TX 75202.

19. Defendant Dr. Theresa Daniel in her official capacity as Dallas County Commissioner, District 1, may be served with process at 500 Elm Street, Suite 7100, Dallas, TX 75202.

20. Defendant Andy Sommerman in his official capacity as Dallas County Commissioner, District 2, may be served with process at 500 Elm Street, Suite 7200, Dallas, TX 75202.

21. Defendant John Wiley Price in his official capacity as Dallas County Commissioner, District 3, may be served with process at 500 Elm Street, Suite 7300, Dallas, TX 75202.

22. Defendant Dr. Elba Garcia in her official capacity as Dallas County Commissioner for District 4, may be served with process at 500 Elm Street, Suite 7400, Dallas, TX 75202.

## JURISDICTION AND VENUE

23. The amount in controversy exceeds the jurisdictional minimum amount in controversy for this Court.

24. The Court has jurisdiction over the lawsuit because the suit is brought pursuant to and for the enforcement of the Fair Labor Standards Act pursuant to 29 U.S.C.A. § 216(b) and 28 U.S.C.A. § 1331, pursuant to 42 U.S.C.A. 1983 as a civil action to enforce constitutional rights and pursuant to the supplemental jurisdiction permitted by for state law and state constitutional claims.

25. Venue is proper in the Northern District of Texas, Dallas Division pursuant to 28 U.S.C.A. § 1391 because the County's violated the Fair Labor Standards Act, and committed all other violations alleged, in this judicial district.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

26. This is an appropriate collective or representative action pursuant to 29 U.S.C.A. § 216(b), sometimes referred to as an "opt-in" class action.

27. The opt-in class is defined as follows:

All past, current and future non-exempt employees who were, are, or will be employed by the County during the period of three years prior to the date of commencement of this action through the date of judgment in this action, who:

a. worked more than 40 hours in at least one seven-day work period during this period; and

b. were not paid one- and one-half times their typical hourly wage for such work.

28. Plaintiffs reserve the right to amend the class definitions consistent with information obtained through discovery and court ruling regarding equitable tolling.

29. This is also an appropriate collective or representative action pursuant to Fed. R. Civ. P. 23(b)(3), sometimes referred to as an "opt-out" class action, because all the requirements of the Rule are met:

a. 23(a)(1) The class is so numerous that joinder of all members is impractical. On information and belief, there are more than 6,500 present and former employees of Dallas County who are being deprived of, have lost, or are at risk of losing compensation related to overtime hours accrued pursuant to FLSA Section 7. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiffs are informed and have reason to believe that several putative class members have worked for the County without appropriate compensation;

b. 23(a)(2) There are questions of law and fact that are common to the class, as set forth below;

c. 23(a)(3) The named Plaintiffs' claims are typical of those of the class members. Plaintiffs' claims encompass the challenged customs, practices, and policies of County regarding compensation. Furthermore, Plaintiffs' legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to which state and federal laws are violated by such conduct apply equally to the named Plaintiffs and to the class;

d. 23(a)(4) The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs' claims are not antagonistic to those of the putative class; and

e. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. While the individual compensatory damage suffered by each class member is not insignificant, it is not substantial enough to justify the expense and burden of individual litigation. To conduct this action as a class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of

the parties and the court system, protects the rights of each class member and maximizes recovery to them.

30. Plaintiffs sue on behalf of themselves and all other members of the above-defined class.

## STATEMENT OF FACTS

31. The DCCC and its supporting administration have persistently, intentionally, and willfully maintained illegal employment and compensation practices by failing to pay for legally mandated FLSA compensatory time, and other compensation, by paying employees under their stated hourly wage, by concealing errors in compensation records, and by withholding compensation for hours worked. Employees have filed complaints seeking to get the compensation they are owed and have faced serious, class-wide, retaliation. This complaint is filed as yet another expression of first amendment speech by numerous County employees because they seek to finally end the punitive illegal practices which deprive the employees of proper, timely, and legally compliant compensation. Despite Dallas County's place in the delivery of law and justice, it has demonstrated customs, practices, and policies of "do as I say, not as I do," a double standard that can no longer continue.

32. At all times relevant to this cause and for longer than three years, Plaintiffs have been employed by County. They are and have been classified as non-exempt employees who have been paid, or accrued compensatory time, by the hour for work performed and have not been paid a salary. Many employees of County are further classified as law enforcement employees.

33. Defendant Dallas County faces demanding statutory (in the case of the Sheriff's Office) and non-statutory demands for services while experiencing regular staffing shortages and Commissioner Court funding shortages which force its employees to regularly work beyond a typical 40-hour workweek. As a result, County employees have received four different forms of

compensation: Regular Hours Worked, Paid Leave, FLSA Compensatory Time ("FLSA Time") and FLSA Other Compensatory Time ("OC Time").

34. "Regular Hours Worked" refers to the hourly compensation that County employees receive for working up to 40 hours per calendar week within their position of employment.

35. "Paid Leave" is time away from work for a variety of reasons such as personal time off, vacation leave, holiday leave, and sick leave. This form of leave is provided for in the County's personnel policy and is paid at the same rate as Regular Hours Worked.

36. "FLSA Time" is awarded in lieu of overtime pay for actual time worked over 40 hours in a seven-day work week. It is earned at a rate of one- and one-half hours for each hour worked over 40 in one week.

37. "OC Time" is defined as "Other Compensatory Time" by 29 C.F.R. § 553.28. It directly compensates employees for actual hours worked up to 40 hours, during a seven-day work week when a form of paid leave has been applied. It is earned at the same rate as Regular Hours Worked, one hour for each hour worked.

**Hidden Pay Errors**
**The First Department of Labor Investigation**

38. In April of 2023, County changed its accounting software payroll system from Employee Self-Service (called "EBS") to Fusion Employer Services ("Fusion"). During the transition County lost a significant amount of employee compensation data. Employees went without payment for more than two months. The issue was widely known and broadly reported on by news outlets.

39. On July 8, 2023, CBS News Texas published a story[5] revealing that some Dallas County employees had not been paid properly for a period of 10 weeks.[6] The impact was so severe that

[5] Olivia Leach, *Dallas County payroll problems cause stress, frustration*, CBS TEXAS, July 8, 2023, https://www.cbsnews.com/texas/news/dallas-county-payroll-problems-cause-stress-frustration/.
[6] Id.

County employees sought loans from the Dallas County Sheriffs Association in order to pay their basic living expenses.[7] To stir the County into action after employee voices fell on deaf ears, Dallas County Sheriff Marian Brown issued a letter stating, in part:

> *I am insisting that Dallas County Sheriff's Department employees be properly compensated and that all compensation in arrears for those employees who have, in good faith, worked their jobs with expectation of full pay, be corrected immediately*.[8]

Plaintiff, Sgt. Dyer (President of the Association) was reported to have stated:

> *…when employees have gone to the payroll office for answers some found a closed sign on the door. Others say payroll told them they'd see corrections on the next check. Well, the next check comes and it's still not there ...employees filed complaints with the Department of Labor.*[9]

The U.S. Department of Labor, whose Wage and Hour Division opened an investigation into the County as a result.[10] Defendant, Dallas County Judge Clay Jenkins, issued a statement. According to the report he stated:

> *Obviously, it's important that all are paid fully and on time. Dallas County is working to fix the issue and will cooperate fully with the Department of Labor.*[11]

40. What was not known by employees, and not reported on by news outlets, was the loss and misallocation of employee compensatory time. Prior to the software change, the County maintained a record of earned, but not paid, hours of compensatory time for each employee that did not distinguish between FLSA Time and OC Time. Each employee had a single balance of compensatory time as shown on their pay documentation that commingled the two types. This practice violated the FLSA.

---

[7] Id.
[8] Id.
[9] Id.
[10] Matt Houston, *U.S. Department investigating after reports of Dallas County employees experiencing payroll issues,* WFAA, July 6, 2023, https://www.wfaa.com/article/news/local/dallas-county/department-of-labor-investigating-dallas-county-payroll/287-4cd55609-b3ac-43dd-9780-d9adcf47b3c7.
[11] Id.

41. After the change in software, these two categories were finally separated. The new software established limits of 480 hours of FLSA Time for law enforcement employees, 240 hours of FLSA Time for employees that were not in law enforcement, and 240 hours of OC Time for both. The software then distributed each employee's formerly comingled time into the different categories. However, upon information and belief, each employee's FLSA Time was set to the maximum allowed by law and the remaining hours were either deposited into the OC Time balance without consideration to the actual number of hours worked belonging to each category or lost from the records. Meaning FLSA Time that had been accrued over the limit when the time was comingled, either lost its FLSA status in the system, or was lost entirely, resulting in many violations of the FLSA.

42. It is unclear what method was used to allocate each employee's balances of FLSA Time and OC Time from the commingled time balance. Discovery will assist in this claim.

43. After the new software was introduced and the different types of compensatory time were distinguished, some County employees began to notice more issues with the payroll including missing or incorrect paychecks, loss of accrued compensatory time, and incorrect accounting of vacation leave and other forms of paid time off. Individual employees, who happen to notice the discrepancies, made numerous complaints to the County but, upon information and belief, the County never notified its approximately 6,500 employees of the ongoing issues or investigated to confirm the overall accuracy of employee payroll and accrual information to ensure accuracy, as required by the FLSA.

**Retaliatory Hour Cuts**
**The Second Department of Labor Investigation**

44. In response to the repeated compensation errors raised by employees, instead of notifying their 6,500 employees of the ongoing, and not yet disclosed, errors related to overtime and

compensatory time, the County decided to erase thousands of hours of compensatory time its employees had already worked to earn.

45. On or about August 20, 2024, the Dallas County Commissioners Court passed Court Order 2024-0879, an Update to Dallas County Code Chapter 82's policies on Personnel, Benefits, Payroll, and Compensation and Fair Labor Standards Act Compensatory Time ("Update to Chapter 82"). The policy restricted the amount of compensatory time that could be accrued. It limited FLSA Time for law enforcement personnel to 240 hours (50% cut), and limited FLSA Time for non-law enforcement personnel to 120 hours (a 50% cut) and the option for OC Time accrual was removed entirely.

46. What many not employed by a county would recognize is – accrued compensation is used as an emergency financial parachute by many deputy sheriffs to care for themselves and their families in periods of extended recovery from on-the-job injuries. There are numerous dangers that arise in law enforcement, from physical[12], mental[13], and emotional[14] perspectives. These accruals save their financial well-being when they need it most.

47. Moreover, pursuant to the new policy, which was not implemented for four months (despite being effective immediately as local law) until December 2024, employees were informed that the County would not pay employees cash for any compensatory time, no matter what. It also required the employees to exhaust all their accrued OC Time by September 30, 2025. Any remaining worked and accrued regular work hours at the employees' regular rate of pay, but unused, was eliminated by DCCC Order!

---

[12] Law Enforcement Safety, UNIV. OF ILL. – CHICAGO, https://policeepi.uic.edu/law-enforcement-safety/#:~:text=Law%20Enforcement%20Officer%20Injuries%20in%202023%20*,any%20cause%20(Bureau%20of%20Labor%20Statistics%20data)

[13] *See* Law Enforcement Mental Health and Wellness Act (LWMHWA) Program, U.S. DEPARTMENT OF JUSTICE https://cops.usdoj.gov/lemhwa

[14] Missy Morris, *Cops and Divorce Rate – Third Time Is the Charm?*, LEXIPOL, Jan. 12, 2023, https://www.lexipol.com/resources/blog/cops-and-divorce-third-time-is-the-charm/

48. To make it even more difficult, the County designed the use process in a manner that would make many employees fail to meet the self-imposed deadline. It created a stonewall which had to be overcome, before employees could even start using their OC Time. The County required employees to first use all accrued FLSA Time, before they could use OC Time. This application made the elimination of OC Time essentially impossible for those with high accruals of FLSA time or those with schedules which required the accrual of more overtime.

49. It must also be noted that the elected officials which make up the DCCC are not the elected officials with the obligation to ensure the work of the County Sheriff's Office is performed in compliance with mandatory Jail Standards or have the obligations to ensure the duties of the Sheriff's Office are carried out. Upon information and belief, the Sheriff has requested funds from the DCCC to meet the needs of the Office regularly, without the anticipated funds needed to operate the office as required, being appropriated by the DCCC for that purpose.

50. Effective September 30, 2025, by Order of the DCCC, all County employees lost all unused but accrued OC Time by operation of law, and further, the very status of having more than the new Chapter 82 caps on accrued by unused compensation is a status placing every such employee in an "unlawful" status of employment. Dallas County Code Chapter 82 is local law. A violation of local law is "unlawful", and any unlawful act is defined as grounds for termination within Chapter 82.

51. As approved and as applied, the policy was clearly designed to steal the money earned and accrued as OC Time pay from the employees. It was also designed to steal all the other accrued authorized leave pay from leave benefits from employees who are saddled with having to work overtime for the county because the DCCC will not provide sufficient funding to the County Sherriff's Office to meet the county's law enforcement needs.

52. All other leave benefits are being taken from the employees with accrued by unused overtime. This form of retaliation for requiring the county to confirm its conduct to be in compliance with federal laws is outrageous! Before employees were able to use the to-be-eliminated compensatory earnings, it required to use FLSA time before other forms of accrued paid leave such as vacation, family, medical, and leaves of absence, in some cases rendering those benefits illusory.

53. In cases, for example, where an employee is receiving on-going medical treatment after reaching "maximum medical improvement" for a compensable injury after returning to work, time away from work to attend medical treatment was required to be charged as compensatory leave. Employees who accrued large amounts of FLSA Time and OC Time were required to use this compensatory time before other categories of paid leave, effectively eliminating employees annual and recurring vested benefits conferred upon them through employment. This has compounded the custom, practice, and policy that decreased the value of benefits such as sick leave and forced many employees to lose the accrued compensation for actual time worked.

54. Many employees did not actually know how many hours of OC Time they had. Employees reported discrepancies between the number of accrued hours reflected on their pay slips and the number of accrued hours they were been told they had by supervisors and other County staff. A failure to maintain consistently accurate records of employee compensation in violation of the FLSA.

55. Despite the change in limits, County employees continued to accrue more compensatory time above both County policy and federal law due both to ongoing understaffing and due, again, undisclosed, coding errors that caused employees to accrue compensatory time when they should

have been paid overtime. The additional time accrued over the established limits is listed as "excess time" which was stored for each employee and not paid by the County.

56. On December 11, 2024, the errors in paycheck data gained media attention again. The Dallas Morning News published a report entitled:

> *Dallas County employees shorted overtime pay again*[15]
>
> *Confusion over a new method for coding time in the payroll system resulted in employees being shorted in their paychecks Nov. 22 and Dec. 6.*
>
> *Dallas County employees have been shorted overtime pay twice in two weeks amid confusion around a new method for coding hours into the payroll system, according to Dallas County Administrator Darryl Martin.*
>
> *The Department of Labor has opened an investigation into the matter, Martin confirmed, making this at least the second time in a year and a half the agency has investigated payroll problems in Dallas County. The most recent investigation was first reported by The Dallas Observer.*
>
> *Martin said a new process for coding overtime took effect in late November and department heads were notified of the change. But Sgt. Christopher Dyer, president of the Dallas County Sheriff's Association, said the message did not make it to the supervisors responsible for recording their employees' time.*
>
> *Previously, supervisors coded the time their employees worked beyond eight hours within a single day as either compensatory time or overtime pay. Beginning with the Nov. 22 pay period, supervisors are now required to begin coding hours as overtime once employees surpass 40 hours in a week — otherwise, those hours will automatically be counted as compensatory time.*
>
> *Because not all supervisors knew to mark overtime this way, Dyer said, employees were shorted hundreds of dollars of overtime in their Nov. 22 and Dec. 6 paychecks when the system banked all hours worked beyond 40 hours in a week toward compensatory accrual. Martin said the audit department has been working to issue correct pay to all employees affected and train supervisors on the new timekeeping process.*
>
> *He could not confirm how many of the 6,500 employees were affected or how much pay was shorted. But he said the problem primarily affected the Dallas County Sheriff's Office, which accounts for most of the overtime work.*

---

[15] Tracey McManus, *Dallas County employes shorted overtime pay again*, DALLAS MORNING NEWS, Dec. 11, 2024, https://www.dallasnews.com/news/2024/12/11/dallas-county-employees-shorted-overtime-pay-again/.

*I hate that this hit the employees around the holidays, which is why we're pushing to make sure everybody gets their money, Martin said. Dyer said the debacle has been a significant blow to morale, especially because employees depend on their overtime to make it through the holidays. He said timekeeping training should have been provided to all supervisors before the change took effect.*

*They made this change but didn't tell anybody, so all of us are coding it the way we've been coding it for 24 years, Dyer said. You look at the fact that Dallas County, we're one of the lowest paid counties, so things are already bad ... then you put this problem on top of that. <u>The coding change is related to a series of updates to compensatory time rules approved by the Commissioners Court in August, Martin confirmed.</u> [emphasis added]*

*As of Aug. 24, the cap for compensatory time balances is 240 hours for nonexempt law enforcement employees and 120 hours for all other nonexempt county employees, according to the court order. Anyone with balances above those caps must take their paid leave before Jan. 1. The policy change was made as employee balances for paid leave were growing and those payouts could "potentially impact the financial health of the organization," the court order states. Martin said officials also want to encourage employees to use their paid time off to avoid burnout and stay healthy.*

*…*

*The issue follows another round of problems that unfolded in summer 2023 when hundreds of employees received paychecks missing money amid the county's rollout of a new software system. It prompted the Department of Labor to launch an investigation, which resulted in the county paying 821 employees $466,827 in owed overtime wages, according to department spokesperson Juan Rodriguez.*

*Rodriguez confirmed the Department of Labor has another open and ongoing investigation into the county but declined to provide further details. Martin confirmed the investigation is related to the most recent overtime pay issues and that the county is cooperating.*

*According to a Dec. 6 memo from Dallas County Auditor Timothy Hicks to the Dallas County Sheriff's Association, the county will be scheduling a series of training sessions for timekeepers "in the coming weeks." But Dyer said employees are still waiting to be made whole on their Nov. 22 and Dec. 6 paychecks and their frustration is building. Some have discussed the idea of walking off the job, but Dyer said he has had to remind them that striking is illegal for law enforcement in Texas.*

*"People are mad," Dyer said. "They get forced to work overtime; they are tired. And to not get paid? This is a really bad time to do this right before Christmas."*

57. On December 31, 2024, the Dallas Observer updated its story[16] of December 10, 2024, publishing another story[17] titled *'Bunch of Crooks': Dallas County Officers Report Missing Pay Before Christmas*, revealing:

> *For the second time in two years, the U.S. Department of Labor is investigating reports of unpaid wages in Dallas County.* [Emphasis added}
>
> ....
>
> *The Observer spoke with four officers employed at the Dallas County Jail who were not financially compensated for overtime hours worked for at least two of the last three pay periods. One officer had multiple complaints over inaccurate pay forwarded to a third-party payroll company, which then referred the officer back to their direct supervisors. Those supervisors, in turn, told the officer to reach out to the third-party company. "No one is taking responsibility," said the officer, who said they had not received a response to any email inquiry regarding their pay.*[18]

58. Upon information and belief, after the "use-it-or-lose-it" policy was implemented, a significant number of employees were not able to exhaust their accrued hours in the time between the passage of the Update to Chapter 82 and the deadline of September 30, 2025. Numerous employees, including law enforcement officers, would have needed to utilize days, weeks, or even months of compensatory time between December 2024 and October 2025 which would have created a massive interruption of county services, especially public safety services within the County.[19]

[16] Emma Ruby, *'Bunch of Crooks': Dallas County Officers Report Missing Pay Before Christmas,* DALLAS OBSERVER, Dec. 31, 2024, https://www.dallasobserver.com/news/dallas-county-overtime-pay-impacted-again-by-payroll-system-error-21258624/.
[17] *See* Id.
[18] Id.
[19] Upon information and belief, Dallas County has recently experienced difficulty fulfilling payment obligations to law enforcement personnel, further hindering the ability of employees to utilize their compensatory time before its elimination. *See* Emma Ruby, *'Bunch of Crooks': Dallas County Officers Report Missing Pay Before Christmas*, DALLAS OBSERVER, *https://www.dallasobserver.com/news/dallas-county-overtime-pay-impacted-again-by-payroll-system-error-21258624/.*

59. According to County policy and federal law, employees should be paid for the value of their hours beyond the applicable maximum. After September 30, 2025, employees lost an anticipated count of hundreds or even thousands of hours (in the aggregate) of accrued OC Time. This time is an essential part of County employees' compensation packages, was worked with an agreed expectation of payment and they represent thousands of worked hours for the public purpose of conducting county business.

**Retiree Underpayment**

60. To avoid the illegal removal of the large amount of compensatory time, several employees chose to retire only to find that they were not paid for large portions of the compensation owed to them.

61. As a result of the inaccuracy of documentation, changes in policies, and the inconsistent application of those policies, retirees are not receiving consistent payments at the time of retirement. Recent retirees separated from the County Sheriff's Office were not paid their OC Time accruals. One such retired employee reported that he had accumulated over 100 hours that were not paid when he retired in early 2025. Others reported being refused payment of hundreds of hours of FLSA Time, some of which was illegally accrued over the 480 hour limit, all in violation of the FLSA.

62. In September 2025, two employees in the same position retired on the same day. Upon information and belief, those two retirees were paid according to two different pay policies with different limits applied to their compensatory time payments. Tim Ervin received his entire balance of 275.55 hours of FLSA Time, while Tina Allman was limited to 240 hours of FLSA Time and was not paid for the remainder of her FLSA Time. Neither received any compensation for their accrued OC Time balance. Terry Trout retired in December 2024 and similarly did not receive any

payment for his OC Time balance of 471.8 hours. Another recent retiree reported receiving the correct amount of time, but at a significantly lower pay rate. The methods used to compensate County employees are demonstrably arbitrary and capricious, and the County knows it and willfully allows it to continue.

63. Employees who are nearing retirement are faced with the possibility of losing hundreds of hours of accrued OC Time for hours they have already worked. The Update to Chapter 82 eliminates their accrued amounts and prevents them from receiving the correct pay at their time of separation from the County. County employees who have already retired, or will soon retire, a significant loss of compensation for hours they have accrued throughout long careers with the County. Additionally, The County's repeated deficiencies in recordkeeping make it difficult for employees to determine the accuracy of their pay and obfuscates the full scope of the legal violations. Plaintiffs believe discovery will reveal the full extent of the compensation errors committed by the County against retirees.

**Terminated Employees**

64. Upon information and belief, employees who were terminated from County in the three years preceding this action have not received full compensation for compensatory hours earned. These Employees are also adversely affected by the elimination of accrued compensatory time through the Update to Chapter 82.

65. Plaintiffs believe discovery will reveal the identities of all employees who fit this description.

**Employees Who Died During County Employment**

66. The families of employees who died during their employment with the County including in the line of duty deaths constitute another category of employees affected by the Update to Chapter 82.

67. Compensatory time is often used by deputies who are injured in the line of duty. For employees who die during County employment, especially law enforcement employees who are killed in the line of duty, compensatory time provides money for their families to allow them to regain some level of composure and normalcy. Dallas County's elimination of accrued compensatory time negatively affects the families of deputies killed or injured in the course of their employment as well as all employees generally.

68. Plaintiffs believe discovery will reveal the identities of employees who fit this description.

## CAUSES OF ACTION:

### COUNT 1: EXCESS ACCRUAL
### VIOLATION OF FAIR LABOR STANDARDS ACT
### 29 U.S.C.A. §207(o)(3)(A)

69. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. All current and future plaintiffs who accrued more than the applicable legal maximum of 480 hours of FLSA Time for Law Enforcement Personnel and 240 hours of FLSA Time for non-law enforcement employees bring the following claim.

70. Pursuant to 29 U.S.C.A. § 207(o)(3)(A), after April 15, 1986, once an employee's accrued compensatory time has reached the maximum limit established by law, any additional overtime hours worked shall be compensated by payment of overtime compensation. Courts have consistently aligned their views with the statute. The Supreme Court has made it clear that when

the employees do not use their accumulated compensatory time, the employer is under obligation to pay cash compensation according to 29 U.S.C.A. § 207(O)(3)-(4).[20]

71. Despite federal legal requirements, County maintains a custom, practice, or policy of regularly requiring its employees to accrue FLSA Time over the legal maximums. In the "OPERATIONAL IMPACT" section of the briefing summarizing updates to Dallas County Code Chapter 82 prepared by Dallas County Human Resources Department, it stipulated clearly that employees would not be paid for employee compensatory time accruals above the FLSA threshold for compensatory time accruals.

72. This policy is confirmed in practice. On August 10, 2024, Plaintiff Timothy Allman had accrued 542.1 hours of FLSA Time, Donald Crear had accrued 511.7 FLSA Time, LaTorrez Jones had accrued 621 hours of FLSA Time, and Adrain Moffett had accrued 664.3 hours of FLSA Time, each in excess of the legal maximum for law enforcement. Despite each having overages beyond 480 hours, County did not pay any of the Plaintiffs upon reaching the threshold. In fact, as of September 5, 2025, Plaintiff Adrain Moffett had 1,250.03 hours of FLSA Time in his accrual account. Upon information and belief based on the patterns and practices shown, it is reasonable to believe that a number of the 6,500 County employees are similarly situated.

73. A review of the accruals of FLSA Time and OC Time over the past three years demonstrates the County's continuous violations and illegal pay practices. County's custom, practice, or policy that employees will not be paid for FLSA compensatory time accruals is a direct violation of federal law. The Commissioners Court's adoption of this order is direct evidence of a violation of the Constitution.

---

[20] See *Christensen v. Harris Cnty.*, 529 U.S. 576, 578, 120 S. Ct. 1655, 1658, 146 L. Ed. 2d 621 (2000).

74. Plaintiffs believe that accrual records of the County will prove the County's custom, practice and policy of willfully violating the FLSA. Payroll records of the employees are actually programmed to maintain an accrual category showing the number of unpaid FLSA overtime hours accrued over the legal limit. Programming their payroll system to specifically identify these hours without using it as a means to pay those hours as required by law is clear and convincing evidence that the pay practices of Dallas County are a willful violation of the FLSA.

75. All conditions precedent have been performed or have occurred.

**COUNT 2: FORMER EMPLOYEE SPECIFIC**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C.A. § 207 (o)(4)(A)**

76. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. All current and future plaintiffs who at the time of their termination of employment were not paid all of their FLSA Time accrued or were paid their FLSA Time at a rate that violates the FLSA bring the following claim.

77. 29 U.S.C.A. § 207 (o)(4)(A) states that "an employee who has accrued compensatory time off […] shall, upon termination of employment, be paid for the unused compensatory time at a rate of compensation not less than (A) the average regular rate received by such employee during the last 3 years of the employee's employment, or (B) the final regular rate received by such employee, whichever is higher." The prior version of and Update to Chapter 82 similarly states that employees who separate from service will be paid at either "their regular rate of pay earned during the period immediately prior to separation […], or at the average regular rate of pay over the previous three years, whichever is greater."

78. An example plaintiff, Sergeant Tina Allman, retired in September of 2024 after a long career of regularly working overtime with 522.80 hours of FLSA Time. Despite over 500 hours of

accrued FLSA Time, County only paid Sergeant Tina 240 hours of her FLSA Time when she retired, a loss of 282.8 hours of FLSA Time accrued.

79. Employees who are soon to retire or otherwise terminate their employment with Dallas County face an extraordinary loss in pay they are entitled to under the FLSA. Several retired employees have already been subject to differing pay policies when they separated from the County, including Sergeant Allman and Tim Ervin who retired on the same day, but received different amounts of their accrued compensatory time. Other former employees not yet before the Court report receiving the wrong payrate for the compensatory time paid at retirement.

80. All conditions precedent have been performed or have occurred.

**COUNT 3: FAILURE TO MAINTAIN ACCURATE RECORDS**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C.A. § 211**

81. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. All current and future plaintiffs who were employed with the County prior to the payroll system transition in April 2023 bring the following claim.

82. Pursuant to 29 U.S.C.A. § 211, the employer has the obligation to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time".[21] It shall be unlawful for any employer to violate the above-mentioned obligation.[22]

83. As an example, plaintiff, after the April 2023 change in accounting software, Detective Adrain Moffett lost a significant amount of accrued compensatory time. Detective Moffett's last

[21] 29 U.S.C.A. § 211 (c).
[22] 29 U.S.C.A. § 215 (a)(5).

payroll on EBS showed his compensatory time balance to be 1,409.44. After transferring to Fusion, Detective Moffett's first payroll showed balances of 329.62 hours of "Dallas County Time" (OC Time) and 480 hours of "Compensation Law Time" (FLSA Time) for a total of 809.62 hours of compensatory time. Somehow, the transfer to the new system categorized 480 hours as FLSA Time, despite prior comingling, and deleted 599.92 hours of earned compensatory time.

**Accruals**

| Description | Current | Balance |
|---|---|---|
| Vacation | 4.62 | 109.38 |
| Comp Time | 0.00 | 1,409.44 |
| Sick | 3.69 | 705.38 |

*Detective Moffett's final pay slip from EBS for the pay period ending on April 28, 2023, showing 1,409 total hours of "Comp Time".*

**Accruals**

| Description | Current | Balance |
|---|---|---|
| DC CO TIME Accrual Hours | 329.62 | 329.62 |
| DC LAW TIME Accrual Hours | 480.00 | 480.00 |
| DC SICK PAY Accrual Hours | 709.07 | 709.07 |
| DC VACATION PAY Accrual Hours | 115.54 | 115.54 |

*Detective Moffett's first pays lip from Fusion for the pay period ending on May 5, 2023, showing 480 hours of DC LAW TIME (FLSA Time) and 329.62 hours of DC CO TIME (OC Time) for a total of 809.62 hours of compensatory time.*

84. On or about January 23, 2024, Detective Moffett wrote to Yoshika Smith of the Dallas County Auditor's Office informing her of this discrepancy. Smith replied on January 25, 2024, confirming that there were 606.32 hours that did not convert over to Fusion from EBS, that their office was aware of the issue, and that they were working to restore the hours to Detective Moffett's account.

85. On or about October 23, 2024, Detective Moffett sent an interoffice memorandum to Dallas County Sherrif's Department Executive Chief Patrick Bonner ("Bonner"). In this memorandum, Detective Moffett explained that he believed he was losing 1,021.28 hours of OC Time valued at $42,209.50. Bonner responded that this request was not under the authority of the Sheriff's Office, and that this request would need to be directed to the Commissioners Court and Payroll. Detective Moffett eventually received 606.32 hours back into his account almost a year after they disappeared during the transition to Fusion, but no appropriate response to his anticipated loss of $42,209.50 of earned compensation.

86. The issue of accrued FLSA Time and OC Time being corrupted in some form during the software conversion was not brought to the attention of any County employees, even though Detective Moffett brought the issue to their attention in January 2024. There is no basis to be confident that any County records that existed before 2023 are accurate following this transition.

87. Upon an employee's production of sufficient evidence to show that hours worked were not properly compensated, the burden shifts to the employer to either prove the precise hours worked or negate the reasonableness of the employee's inference.[23] If the employer fails to provide evidence, the court may award damages to the employee notwithstanding that the resulting figure is only an approximation.[24] Here, the Update to Chapter 82 directly authorizes Dallas County to violate federal law and infringe upon the rights of County employees.

**COUNT 4: COUNTY FLSA VIOLATIONS HAVE BEEN WILLFUL**

**29 U.S.C.A. § 255**

88. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. All present and future plaintiffs bring the following claim.

---

[23] See *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946).
[24] See *id*.

89. Under 29 U.S.C.A. § 255, for a cause of action accruing on or after May 14, 1947, the statute of limitations is two years; however, if the action arises from a willful violation, a three-year limitations period applies.[25] Here, County's email correspondence demonstrates that it acted willfully in violating the FLSA. On January 25, 2024, a County auditor confirmed in an Email to Detective Moffett that 606.32 hours of compensatory time failed to convert from EBS to Fusion system. Despite having actual notice, County made no steps to correct this error for seven months, after Detective Moffett took the issue all the way to the Dallas County Commissioners Court.

90. The 480-hour limit on accrued compensatory time set by the FLSA has frequently been violated by County. For example, Detective Timothy Allman has exceeded the threshold on at least two occasions: on August 10, 2024, he had accrued 542.1 hours of FLSA Time and on January 1, 2025, he had accrued 550.1 hours of FLSA Time. That equates to over 366 hours worked beyond a 40-hour work week that Detective Allman has not been paid for.

91. County had notice of each FLSA violation. In fact, the County has a designated category of FLSA time accrued in violation of federal law on each employee's pay slip. That category is named "EXCESS LAW TIME" for law enforcement related employees and "EXCESS COMP NE 15" for non-law enforcement employees. These categories exist as a bank for compensatory time accrued in violation of the FLSA, of which the County is obviously aware. Accordingly, County had actual notice of its failure to credit FLSA compensatory time and had multiple opportunities to pay cash compensation for hours in excess of the applicable threshold, and its continued inaction to date cannot be characterized as anything but willful conduct.

92. Many employees were employed by the County around the time that the U.S. Department of Labor's Wage and Hour Division investigated the County for payroll violations. The County

[25] 29 U.S.C.A. § 255(a).

has been deficient in maintaining adequate payroll systems in the past and has been aware of issues since at least 2023. County has not demonstrated a good faith attempt to notify employees of the true extent of the errors or correct these deficiencies despite having notice of them.

93. County has inconsistently applied the former Chapter 82 and the Update to Chapter 82 to retirees. Retirees who have terminated their employment with the County have been paid inconsistently, even those who retired on the same date as in the case of Sergeant Tina Allman and Deputy Tim Ervin. When some employees are paid for their entire balance of FLSA Time when they separate from the County and others are arbitrarily limited to 240 hours, those employees who have given decades of service to the County lose all confidence in their employer repaying them.

94. As demonstrated by each of these instances, the County continuously and willfully violated the FLSA on many occasions. The three-year statute of limitations applies to this cause of action as a matter of law.

95. All conditions precedent have been performed or have occurred.

**COUNT 5: SECTION 18(A) APPLIES TO COUNTY GOVERNMENT**

**29 U.S.C.A 218(A)**

96. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. Plaintiffs with a balance of OC Time who may have their accrued time eliminated bring the following claim.

97. The FLSA provides that when an a Federal or State law or municipal ordinance establishes better pay practices than required by the FLSA, it is bound to continue to maintain such pay practices.[26] Section 218 was adopted with the intention that it extend to any governmental entity

[26] 29 U.S.C.A. 218(a).

including a County Commissioners Court through 29 U.S.C.A. 203(2)(C) as evidenced by the extension to municipal ordinances.

98. The County has provided OC Time, defined as "Other Compensatory Time" by 29 C.F.R. § 553.28. It compensates employees for actual hours worked up to 40 hours in a seven-day work week during which another form of paid leave (such as a County holiday) is utilized. It is earned at the same rate as Regular Hours Worked, one hour for each hour worked, until an employee reaches 40 actual hours worked. This pay practice is above the floor set by the FLSA, which does not mandate any compensatory time for hours worked under 40 per week. Since the practice of awarding OC Time was above the baseline overtime payment required by the FLSA, County is bound to comply with the County Commissioner Court order applicable at the time the hours were earned.

99. All conditions precedent have been performed or have occurred.

**COUNT 6: DEPRIVATION OF CIVIL RIGHTS**

**42 U.S.C.A. 1983**

**U.S. Const. amend. v**

100. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. Plaintiffs with a balance of OC Time who may have their accrued time eliminated bring the following claim.

101. Federal law, 42 U.S.C.A. § 1983, provides that any person acting under color of state law who deprives any other person of rights secured by the United States Constitution shall be liable to the injured party.

102. The Fifth Amendment to the U.S. Constitution prohibits the taking of private property for private use and prohibits the taking of private property for public use without the payment of just compensation. Through the Fourteenth Amendment, the requirements of the Fifth Amendment,

including the Taking, Due Process, and Just Compensation Clauses, apply to Texas and its political subdivisions.

103. On August 20, 2024, the Dallas County Commissioners Court conducted a meeting at which item 32 on the agenda was consideration of the order amending Chapter 82 of the Dallas County Code. This amendment eliminated the pay and benefit accrued by employees, as applied eliminated annual recurring benefits, and reduced the hours employees could accrue and prohibited the longstanding County practice of awarding OC Time.

104. An order issued by a Commissioners Court in Texas is law as defined by the Texas Penal Code.[27] The Update to Chapter 82 made it unlawful for County employees to possess more than 120 hours of FLSA Time for non-law enforcement employees and 240 hours for law enforcement employees. It also made the accrual of OC Time unlawful effective September 30, 2025

105. The Update to Chapter 82 states that "[OC Time] accruals shall sunset on September 30, 2025. Any remaining balance shall not be paid out." To sunset is to expire or be terminated automatically at the end of a fixed period unless renewed by legislative action. Since the adoption of the Update to Chapter 82, the Commissioners Court has not renewed the OC Time accrual and they have not extended it. Therefore, effective September 30, 2025, the government applied the labor provided by the employees to perform a public purpose, but then illegally "took" the money the accrued time was valued away from the employees. The employees must be compensated for that taking.

106. County's elimination of the accrued overtime hours earned by Plaintiffs throughout their collective decades of employment with Dallas County constitutes a taking of Plaintiffs' property,

[27] Texas Penal Code 1.07(a)(30) "'Law' means the constitution or a statute of this state or of the United States, a written opinion of a court of record, a municipal ordinance, an order of a county commissioners court, or a rule authorized by and lawfully adopted under a statute."

without due process and without the payment of just compensation. The OC Time in each employee's account was earned in the same manner as wages are earned. County policies for jails and detentions officers actually require that employees perform overtime work in order to comply with federal jailing standards. County passing a law that effectively eliminates the payment for hours already worked constitutes a taking of property prohibited by federal law.

107. County intentionally took steps to eliminate employees' OC Time by unanimously passing the Update to Chapter 82.

108. County's stated public purpose is to promote better work-life balance of employees and to protect the financial health of the County. While the County has the right to be concerned about their financial health, they should not be doing so at the expense of their employees. Eliminating OC Time from County employees effectively removes payment set aside for them by the government that they have earned from work performed.

109. County employees are not receiving adequate compensation for the taking of their property. They are not receiving any compensation from the County whatsoever.

110. Plaintiff Christopher Dyer lost 178.65 hours of OC Time with the elimination of this compensatory time category. Plaintiff Adrain Moffett lost 406.02 hours, and Plaintiff Donald Crear lost 322.1 hours. These hours were earned by Plaintiffs at a one-to-one rate for actual hours worked in lieu of payment. The elimination of these hours means that these Plaintiffs will never receive payment for hours they have already worked.[28]

[28] On August 28, 2025, Plaintiffs requested all payroll information for all County employees between the dates of August 20, 2022, to August 20, 2025, in order to determine the scope of employees who had a balance of OC Time in their accrual accounts. Upon information and belief, a large percentage of County employees had a balance of OC Time as of the above date.

111. County, acting under color of state law, deprived Plaintiffs of the rights, privileges and immunities secured to them by the Constitution and the laws of this state. The willful actions of the County violate clearly established statutory and constitutional rights.

112. All conditions precedent have been performed or have occurred.

**COUNT 7: VIOLATION OF TEXAS CONSTITUTION TAKINGS CLAUSE**
**Tex. Const. art. I, ®17**

113. Plaintiffs adopt and incorporate the preceding factual allegations contained herein as if copied verbatim. Plaintiffs incorporate by reference the factual and legal allegations set forth in Count 6, which are equally applicable to this state law claim. Plaintiffs with a balance of OC Time who may have their accrued time eliminated bring the following claim.

114. Article I, Section 17 of the Texas Constitution prohibits the taking, damaging, destruction, or application of a personìs private property for public use without adequate compensation.

115. On August 20, 2024, Court Order 2024-0879 was unanimously approved by Defendants Dallas County Commissioners. This approval was an intentional, affirmative governmental act. When government action targets a specific, identifiable fund to which a vested property interest attaches, Texas courts recognize that such action can constitute a îtakingï under Article I, Section 17 of the Texas Constitution.[29]

116. As mentioned previously, Plaintiffs are or were public employees who were employed with County within the last three years. Throughout their employment, they received compensatory hours as a form of payment for hours worked. This portion of the payment, having been credited to Plaintiffìs payroll account, became a specifically identifiable sum constituting a property interest. Countyìs Update to Chapter 82 would eliminate all hours earned and not paid.

[29] *See Tex. Workforce Comm'n v. MidFirst Bank*, 40 S.W. 3d 690 (Tex. App.-Austin 2001, pet. denied), *see also Cnty of Burleson v. Gen. Elec. Capital Corp.*, 831 S.W.2d 54 (Tex. App-Houston [14th Dist.] 1992, writ denied).

County has proposed a public interest of the Countyìs financial health as a justification for the taking, discussed above. County has not offered any compensation and in fact states that accruals *shall not be paid*.

117. Countyìs Update to Chapter 82 is unconstitutional and void in that it authorizes County to take Plaintiffsì property without first making compensation contrary to Article I, Section 17 of the Texas Constitution.

118. All conditions precedent have been performed or have occurred.

**DAMAGES**

119. As a result of County's unlawful conduct, Plaintiffs and others similarly situated have suffered damages in the amounts of their unpaid FLSA Time, unpaid OC Time compensation, lost wages, liquidated damages as provided by FLSA 29 § 216(b), pre-judgment and post-judgment interest, incurred legal fees, costs and expenses as a consequence of the County's unlaw acts and seek such other legal and equitable relief as the Court deems just and proper.

120. The amount due to each Plaintiff varies depending on the hours worked and amount of overtime hours that were contained in each Plaintiff's accrual account. Those amounts due are within exclusive custody control of the County (if inaccurate records can be reconciled).

121. Plaintiffs bring this suit in good faith and remain eager to resolve the dispute efficiently and constructively. To that end, Plaintiffs respectfully request the County and the Court to approve and enter a Consent Decree to ensure lasting compliance and data accuracy. Specifically, Plaintiffs request the appointment of an independent monitor for a period of five (5) years with authority to:

a. Review, inspect and test County's payroll system, including time-entry, overtime, and payment procedures, and

b. Report to the Court and the parties to this action on a semiannual basis with recommendations and corrective action as needed.

c. Penalties be available to the Court for good cause in the event of a violation of the standards required by the Decree.

122. Plaintiffs, on behalf of themselves and others similarly situated, seek recovery of attorneys' fees and costs as provided by the FLSA 29 U.S.C.A. § 216(b). Attorneys' fees are also available to the prevailing party in actions to enforce claims under 42 U.S.C.A. 1983.

123. Plaintiffs seek all reasonable attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal work, any appeal to the Fifth Circuit Court of Appeals, making or responding to an application for writ of error to the United States Supreme Court, an appeal to the United States Supreme Court if an application for writ of error is granted, and post-judgment discovery and collection in the event execution on the judgment is necessary.

## REQUEST FOR PRELIMINARY INJUNCTION

124. The request for a preliminary injunction against Defendants is made pursuant to 42 U.S.C.A. 1983 and Rule 65 of the Federal Rules of Civil Procedure. The Update to Chapter 82 operates as the moving force causing the infringement of Plaintiffs' rights. Plaintiffs will likely suffer irreparable injury if County is not restrained from enforcing the new policy while this suit is pending. The elimination of accrued compensatory time went into effect on September 30, 2025, on which date all OC Time earned by employees throughout their career started being progressively removed from their accrual accounts. County has demonstrated a failure to maintain accurate employment records tracking the accrued time of County employees, so it is imperative that those accounts are maintained while this action is litigated. Plaintiffs request this Court order

the immediate freezing of County personnel records and for a neutral third-party audit of County employees' compensatory accruals.

125. There is a substantial likelihood that Plaintiffs will prevail on the merits because the proposed facts and circumstances, presented with evidentiary support reveals the Update to Chapter 82 demonstrates a willful violation of the FLSA, and unlawful and unconstitutional government action by the County.

126. The harm faced by Plaintiffs in the loss of compensation records outweighs the harm that would be sustained by County if the preliminary injunction is granted. Dallas County has demonstrated a failure to maintain accurate records. The loss of records and the resulting loss of money would be crippling for the families of County employees, especially those of law enforcement employees injured or killed in the line of duty. This injunction would be relief to prohibit and prevent the unlawful conduct which is taking place, payday after payday to stop during the pendency of this suit.

127. Issuance of a preliminary injunction would improve, rather than adversely affect the public interest.

128. Plaintiffs ask the Court to set their application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a permanent injunction against County.

## REQUEST FOR PERMANENT INJUNCTION

129. Plaintiffs ask the Court to set their application for injunctive relief for a full trial on the issues in this application.

## EQUITABLE TOLLING AND EQUITABLE ESTOPPEL

130. County failed to notify employees of the known and broadly reaching data loss experienced when it transitions to new accounting software in 2023. County misrepresented to its employees that it was properly paying overtime compensation despite knowledge that employees were accruing compensatory time beyond established legal and policy maximums that employees cannot see themselves.

131. As such, the statute of limitations should be equitably tolled for the opt-in plaintiffs, permitting any employee impacted by the unlawful acts of the County from April 2020 forward be permitted to opt-in to recover their rightful pay from the County. County should be equitably estopped from asserting a statute of limitations defense regarding Plaintiffs and the potential opt-in plaintiffs. The equitable tolling doctrine should apply to and be tolled for any plaintiff who opts-in to this lawsuit from the day they were hired to the present.

## JURY DEMAND

132. Plaintiffs hereby demand a trial by jury of all the issues and facts in this case and tenders the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this lawsuit, up through and including the date of this Court's issuance of court-supervised notice, been employed by County as non-exempt employees as described above. Such notices shall inform them that this civil action has been filed, of the nature of the action, and of their right to join.

For these reasons, Plaintiffs ask for judgment against County for the following:

a. Pre-judgment and post-judgment interest.

b. Approve and enter the Consent Decree requested by Plaintiffs.

c. Awarding Plaintiffs their fees and costs, including attorneys' fees in accordance with 42 U.S.C.A. § 1988 and 42 U.S.C.A. § 1983, incurred in the prosecution of their claims.

d. Costs of suit.

e. All other relief the Court deems appropriate.

Dated: October 3, 2025

Respectfully submitted,

**HYDE KELLEY LLP**
2806 Flintrock Trace, Suite A104
Austin, Texas 78738
Telephone: (512) 686-0700
Facsimile: (866) 929-1641

*/s/ George E. Hyde*
GEORGE E. HYDE
Texas State Bar No. 45006157
ghyde@txlocalgovlaw.com
MATTHEW L. WESTON
Texas State Bar No. 24037698
mweston@txlocalgovlaw.com

**ATTORNEYS FOR PLAINTIFFS**